**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

UNITED STATES OF AMERICA,

        Plaintiff,

                                  Case No. 13-20187

v.                                Hon. Gerald E. Rosen

MAURICE GHOLSTON,

        Defendant.

_____/

**OPINION AND ORDER DENYING**
**DEFENDANT'S MOTION TO SUPPRESS EVIDENCE**

At a session of said Court, held in
the U.S. Courthouse, Detroit, Michigan
on _____January 27, 2014_____

PRESENT:  Honorable Gerald E. Rosen
                       Chief Judge, United States District Court

## I.  INTRODUCTION

Defendant Maurice Gholston, along with co-Defendant Robert Metcalf, is charged

in a March 21, 2013 first superseding indictment with one count of interference with

commerce by robbery, in violation of 18 U.S.C. § 1951(a), and one count of use of a

firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c).

Through the present motion filed on October 28, 2013, Defendant seeks to suppress

evidence obtained during a search, pursuant to a warrant, of the contents of a cell phone

found in Defendant's possession at the time of his arrest.

On December 5, 2013, the Court held a hearing on Defendant's motion to

suppress.  For the reasons stated on the record at the December 5 hearing, as
supplemented by the rulings below, the Court denies Defendant's motion.

## II.  **FACTUAL BACKGROUND**

On February 12, 2013 at approximately 10:24 p.m., two masked men entered a BP
gas station located at 1781 South Fort Street in Detroit, Michigan.  One of the men was
armed with a long gun.  After gaining access to the enclosed cashier area of the gas
station and pointing the gun at the cashier, the robbers ripped the cash register off the
counter, and the two men then fled the location.

Following this incident, the gas station cashier was interviewed by the Detroit
police, and he identified one of the robbers as an individual he knew as "Reese" who
regularly visited the gas station.  In addition, law enforcement officers reviewed security
footage captured by cameras inside the gas station.  Through their investigation, the
Detroit police determined that "Reese" was Defendant Maurice Gholston, and Defendant
was arrested by Detroit police officers on February 21, 2013, nine days after the gas
station robbery.  At the time of his arrest, Defendant had a T-Mobile cellular telephone in
his possession, and the arresting officers seized this cell phone but did not examine its
contents at the time.  Defendant was held in custody until February 25, 2013, and was
then released following a detention hearing, but his cell phone was not returned to him.

On March 4, 2013, FBI Task Force Officer ("TFO") Anthony Gavel submitted an
application for a search warrant to Magistrate Judge David R. Grand, seeking

2

authorization to search the cell phone seized from Defendant for evidence relating to the

BP gas station robbery.[1]  In support of this application, TFO Gavel detailed the robbery

offense under investigation, the facts that had led to Defendant's arrest for this offense,

and the results of the previously authorized search of Defendant's home.  TFO Gavel

further stated, based upon his training and experience regarding cell phone use in

robberies involving multiple participants, that an examination of the data on these devices

can reveal evidence of "who possessed or used the device," and that the individuals

involved in such "violent robberies often pre-plan the robbery by searching the internet

for locations of certain businesses" and by "coordinat[ing] and communicat[ing] via

cellular telephone prior to the robbery to arrange meeting times, the availability of

firearms and other details related to the robbery."  (Defendant's Motion, Ex. A, Search

Warrant Aff. at ¶ 11.)[2]  Accordingly, TFO Gavel sought the authority to "locate forensic

electronic evidence" on the cell phone that "establishes how [the device] was used, the

purposes of its use, who used it, and when as well as evidence of other participants to the

robbery," and he opined that there was "probable cause to believe that this forensic

electronic evidence might be on the Device."  (*Id.* at ¶ 13.)

---

[1]Previously, on February 27, 2013, TFO Gavel applied for a warrant to search
Defendant's home for footwear that had been observed in the gas station security video.  The
requested warrant was issued, and the ensuing search uncovered a pair of boots that appeared to
be the same as those worn by one of the robbers in the video.

[2]TFO Gavel observed elsewhere in his warrant application that the "user attribution"
evidence typically found on a cell phone, which "indicate[s] who has used or controlled the
device," is analogous to the "indicia of occupancy" that officers look for "while executing a
search warrant at a residence."  (*Id.* at ¶ 13(b).)

3

Magistrate Judge Grand issued the requested search warrant on the date it was sought, March 4, 2013, and federal officers proceeded to search the contents of the cell phone found in Defendant's possession on the date of his arrest.  According to the Government, this search revealed text messages sent to co-Defendant Metcalf and accompanying images created on the date of the robbery, February 12, 2013, that "depict[ed] [Defendant] in masks that appear to be the same as those worn by the perpetrators of the robbery."  (Gov't Response Br. at 4.)  Defendant now seeks to suppress the evidence obtained in this search of his cell phone.

### III.  <u>ANALYSIS</u>

**A.     The Seizure of Defendant's Cell Phone Incident to His Arrest, and the Later Search of This Cell Phone Pursuant to a Warrant, Did Not Violate Defendant's Fourth Amendment Rights.**

It is well-settled that a police officer may perform a warrantless search of an individual incident to a lawful custodial arrest.  *See United States v. Robinson,* 414 U.S. 218, 235, 94 S. Ct. 467, 477 (1973); *United States v. Campbell,* 486 F.3d 949, 955 (6th Cir. 2007).  The justification for such a search incident to arrest is not confined to "the need to disarm the suspect in order to take him into custody," but also extends to "the need to preserve evidence on his person for later use at trial."  *Robinson,* 414 U.S. at 234, 94 S. Ct. at 476; *see also United States v. Buford,* 632 F.3d 264, 268 (6th Cir. 2011).  For purposes of his present motion, Defendant does not challenge the legality of his arrest, nor does he deny that the arresting officers had the authority to conduct a warrantless

4

search incident to this arrest.  Rather, he contends that the seizure and subsequent search of his cell phone were unlawful because (i) at the time of his arrest, it would not have been immediately apparent to the arresting officers that the cell phone would contain incriminating evidence subject to seizure, and (ii) nothing in the ensuing investigation or in the search warrant application prepared by TFO Gavel bridged this gap and provided probable cause to believe that this device would contain evidence of the robbery offense under investigation.

As the parties tacitly acknowledge in their briefs, no court has directly addressed the specific issues raised in Defendant's motion, at least under facts similar to those presented here.  Instead, the Government proceeds by analogy to case law — albeit none that is binding upon this Court — affirming an arresting officer's authority to seize a cell phone and conduct a warrantless search of its contents incident to a lawful arrest.  In *United States v. Murphy,* 552 F.3d 405, 407-08 (4th Cir. 2009), for example, defendant Damian Antonio Murphy was a passenger in a car stopped by state troopers for reckless driving, and it was determined that no one in the vehicle had a valid driver's license. When Murphy identified himself by multiple names to the troopers and "his true identity could not be verified," he was arrested for obstruction of justice.  *Murphy,* 552 F.3d at 408.  In an effort to confirm his proper identity, Murphy handed one of the troopers his cell phone and "showed [the trooper] how to use it in order to locate the number for [Murphy's] employer."  *Murphy,* 552 F.3d at 408.  During a subsequent inventory search of the items seized from the vehicle in which Murphy was riding, the troopers found that

some of cell phones taken from Murphy and his fellow passengers "contained possible incriminating information," so the phones were logged as evidence. 552 F.3d at 409. A later, more thorough search of Murphy's cell phone by a DEA agent uncovered text messages from an individual who identified Murphy as his drug supplier, resulting in drug conspiracy charges against Murphy.

Like Defendant here, Murphy did not deny that there was probable cause for his arrest. Instead, he first challenged the district court's finding that the cell phone was seized from his person during a search incident to his arrest, but the Fourth Circuit found that the district court had a reasonable evidentiary basis for this conclusion. 552 F.3d at 410. Murphy next contended that the warrantless search of the contents of his cell phone was unlawful, both because the Government had not shown that these contents were sufficiently volatile to justify a warrantless search, and because this search was not contemporaneous with his arrest. As to the former point, the Fourth Circuit found that it would be "unworkable and unreasonable" to require a police officer to ascertain the likelihood of imminent loss of cell phone data before conducting a warrantless search of the phone's contents. 552 F.3d at 411. Regarding the passage of time between the initial seizure of the cell phone incident to Murphy's arrest and the search of its contents, the court held that the lawfulness of this search was not undermined by the delay:

> The evidence establishes that the initial search of the cell phone occurred in
> Murphy's presence and at his direction, after he indicated to [a state
> trooper] that the phone contained phone numbers for people who could
> corroborate his identity. Another search of the cell phone occurred at the
> Sheriff's Department during the course of the inventory search, when a

6

supervising officer noted that the cell phone contained potentially incriminating information and directed [a trooper] to retain the cell phone as evidence in the case.  Of course, once the cell phone was held for evidence, other officers and investigators were entitled to conduct a further review of its contents, as [the DEA agent] did, without seeking a warrant.  *See United States v. Edwards,* 415 U.S. 800, 803-04, 94 S.Ct. 1234, 39 L.Ed.2d 771 (1974).  For these reasons, we conclude that the district court committed no error, plain or otherwise, in refusing to suppress the contents of Murphy's cell phone.

552 F.3d at 412.

As the Government observes, *Murphy* is only one of a number of cases — albeit none decided by the Sixth Circuit — approving the warrantless seizure and at least limited search of a cell phone incident to a lawful arrest.  *See, e.g., United States v. Flores-Lopez,* 670 F.3d 803, 809-10 (7th Cir. 2012) (upholding a search of a cell phone incident to an arrest for the limited purpose of obtaining the cell phone number, which in turn was used to subpoena call history records from the telephone company); *United States v. Finley,* 477 F.3d 250, 259-60 & n.7 (5th Cir. 2007) (approving the retrieval of call records and text messages from the defendant's cell phone incident to his arrest, and finding that the "incident to arrest" basis for this ruling was unaffected by the fact that the police transported the defendant a short distance before conducting this search); *United States v. Johnson,* 515 F. App'x 183, 187 (3d Cir. Mar. 19, 2013) (rejecting the defendant's claim that he was arrested without probable cause, and then concluding that the defendant's cell phone was legally seized during a search incident to this lawful arrest); *United States v. Fuentes,* 368 F. App'x 95, 98-99 (11th Cir. Mar. 3, 2010) (affirming the denial of a motion to suppress evidence discovered on the defendant's cell

7

phone, where probable cause existed for the defendant's arrest, and where the cell phone was "seized in a proper search incident to" this arrest); *Silvan W. v. Briggs,* 309 F. App'x 216, 225 (10th Cir. Jan. 23, 2009) (holding that "the permissible scope of a search incident to arrest includes the contents of a cell phone found on the arrestee's person"); *United States v. Martin,* No. 07-20605, 2013 WL 55693, at *4-*5 (E.D. Mich. Jan. 3, 2013) (rejecting the defendant's contention that the officers who arrested him unlawfully searched the contact list on his cell phone in the course of his arrest, and citing *Murphy* and other cases as recognizing the "manifest need to preserve evidence" as justification for an officer's retrieval of information from a cell phone seized incident to an arrest); *United States v. Bass,* No. 11-20704, 2012 WL 1931246, at *6 (E.D. Mich. May 29, 2012) (rejecting the defendant's challenge to the seizure of a cell phone on the ground that the phone actually was not in his possession at the time of his arrest, and concluding that because the cell phone was in fact in the defendant's possession, the arresting officers were permitted to seize it incident to the defendant's arrest).  In the Government's view, these cases readily support the conclusion that the search of Defendant's cell phone was lawful, where the Government secured a warrant prior to this search, rather than merely relying on the authority of the police to conduct a warrantless search incident to an arrest.

In response, Defendant notes as a threshold matter that the question "whether law enforcement may conduct a warrantless search of a cell phone is hardly a settled issue." (Defendant's Reply Br. at 5-6 (collecting cases).)  And, indeed, there are several recent decisions expressing reservations about broad warrantless searches of the contents of a

cell phone incident to an arrest.  The First Circuit has observed, for instance, that such a rule seemingly "would give law enforcement broad latitude to search any electronic device seized from a person during his lawful arrest, including a laptop computer or a tablet device such as an iPad," and that a warrantless search of an electronic device presumably "could encompass things like text messages, emails, or photographs."  *United States v. Wurie,* 728 F.3d 1, 7 (1st Cir. 2013) (citations omitted).[3]  Moreover, given that "individuals today store much more personal information on their cell phones than could ever fit in a wallet, address book, [or] briefcase," the court in *Wurie* expressed its concern that a warrantless search of cell phone data incident to an arrest would be akin to the writs of assistance used by "customs officers in the early colonies . . . to rummage through homes and warehouses, without any showing of probable cause linked to a particular place or item sought."  *Wurie,* 728 F.3d at 9; *see also Flores-Lopez,* 670 F.3d at 805 (recognizing that "a modern cell phone is a computer," and "not just another purse or address book," so that "[t]he potential invasion of privacy in a search of a cell phone is greater than in a search of a 'container' in a conventional sense"); *United States v. Lucas,* 640 F.3d 168, 178 (6th Cir. 2011) (cautioning that "analogizing computers to other physical objects when applying Fourth Amendment law is not an exact fit because computers hold so much personal and sensitive information touching on many private

---

[3]The Supreme Court has just granted certiorari in *Wurie, see United States v. Wurie,* 82 U.S.L.W. 3104 (U.S. Jan. 17, 2014), and will presumably address the issue of cell phone searches incident to arrest in the near future.

9

aspects of life"). Accordingly, the First Circuit held "that the search-incident-to-arrest

exception does not authorize the warrantless search of data on a cell phone seized from an

arrestee's person, because the government has not convinced us that such a search is ever

necessary to protect arresting officers or preserve destructible evidence." *Wurie,* 728

F.3d at 13; *see also United States v. Dixon,* __ F. Supp.2d __, 2013 WL 6055396, at *4-

*6 (N.D. Ga. Nov. 15, 2013) (finding that a federal agent's extraction of data from the

defendant's cell phone, conducted in the agent's office while the defendant was being

booked at a different location, could not be justified as a warrantless search incident to an

arrest, where the intrusion on the defendant's privacy "involved much more than just a

limited search for the phone's log history or recent calls," and where there was no "viable

threat that the phone data could be remotely wiped or destroyed"); *Schlossberg v.

Solesbee,* 844 F. Supp.2d 1165, 1170 (D. Or. 2012) (holding that the warrantless search of

an electronic device, such as the digital camera at issue in that case, is "not reasonable

incident to a valid arrest absent a showing that the search was necessary to prevent the

destruction of evidence, to ensure officer safety, or that other exigent circumstances exist"

(footnote omitted)); *United States v. Quintana,* 594 F. Supp.2d 1291, 1300 (M.D. Fla.

2009) (suppressing the evidence found in a warrantless search of a digital photo album on

the defendant's cell phone following his arrest for driving with a suspended license,

where "[t]he search of [the] [d]efendant's cell phone had nothing to do with officer safety

or the preservation of evidence related to the crime of arrest").

Yet, while the legality of warrantless searches of cell phones incident to arrest

10

remains a point of discussion and disagreement among the courts and an open question in this Circuit, it ultimately is unnecessary for this Court to weigh in on this subject. In this case, after all, there was no warrantless search of Defendant's cell phone incident to his arrest; rather, the contents of Defendant's phone were first examined nearly two weeks after his arrest, upon TFO Gavel's procurement of a warrant authorizing this search. Thus, even if the courts were to express their unanimous disapproval of warrantless searches of cell phones incident to arrest, this would merely compel law enforcement to proceed precisely as TFO Gavel did here — *i.e.,* by obtaining a warrant before searching a suspect's cell phone for evidence of a crime under investigation. It does not appear, then, that the search-incident-to-arrest decisions surveyed above and cited in the parties' briefs promise to resolve the issues presented in Defendant's motion. *See United States v. Bah,* No. 2:13-CR-48, 2013 WL 5652647, at *7-*8 (E.D. Tenn. Aug. 8, 2013) (noting the "split of authority" on the propriety of warrantless cell phone searches incident to arrest, but reasoning that even assuming "a warrant is required to search and retrieve the contents of a cell phone, that ultimately was done in this case").

Nonetheless, the Court acknowledges the Government's point that the case law upholding the legality of warrantless searches of cell phones incident to arrest lends indirect support, at least, to the conclusion that the search at issue here did not transgress Defendant's Fourth Amendment rights. In particular, these rulings recognize, if only implicitly, that a prompt, warrantless seizure and search of a suspect's cell phone is justified in order to preserve possible evidence of the offense of arrest that might

11

otherwise be lost or destroyed.  Absent this concern, the rationale for a warrantless search incident to arrest would have been lacking in those cases.  *See Arizona v. Gant,* 556 U.S. 332, 339, 129 S. Ct. 1710, 1716 (2009) (explaining that the incident-to-arrest exception to the warrant requirement serves the two interests of "protecting arresting officers and safeguarding any evidence of the offense of arrest that an arrestee might conceal or destroy"); *cf. Wurie,* 728 F.3d at 10-11 (determining that warrantless searches of cell phones incident to arrest should not be allowed because such searches cannot be "justified by a need to protect arresting officers," and because the "slight and truly theoretical risk of evidence destruction" is outweighed by the "significant privacy implications inherent in cell phone data searches").

Accordingly, to the extent that Defendant argues that the evidence uncovered in TFO Gavel's search of his cell phone should be suppressed because the possibly incriminating nature of this evidence would not have been immediately apparent to the Detroit police officers who arrested him and initially came upon and seized this device, this contention is inconsistent with the reasoning behind the courts' widespread (albeit not uniform) recognition that a cell phone may lawfully be seized and its contents searched without a warrant incident to an arrest.  While the precise rationale for this conclusion varies somewhat from case to case, the courts have often cited the need to preserve evidence that could otherwise be readily deleted from the device.  *See, e.g., Flores-Lopez,* 670 F.3d at 807-09; *Murphy,* 552 F.3d at 411; *Finley,* 477 F.3d at 260; *United States v. Young,* 278 F. App'x 242, 245-46 (4th Cir. May 15, 2008); *United States*

*v. Santillan,* 571 F. Supp.2d 1093, 1102-03 (D. Ariz. 2008). The courts have further observed that a cell phone is similar in some respects to a diary or address book, and that the police are permitted to "leaf through" such items incident to an arrest to determine whether they "contain[] information relevant to the crime for which [the suspect] has been arrested." *Flores-Lopez,* 670 F.3d at 807; *see also United States v. Merriwether,* 917 F.2d 955, 958 (6th Cir. 1990) (determining that the seizure and activation of a pager was akin to the examination of a "personal telephone book believed to contain the numbers of suppliers or customers"); *United States v. Gomez,* 807 F. Supp.2d 1134, 1146 (S.D. Fla. 2011) (drawing a comparison between "highly personal items like wallets or purses" and "an electronic storage device like a cell phone (especially its call log history)"). In light of these recognized grounds for the warrantless seizure and search of a cell phone incident to an arrest in order to preserve its contents as possible evidence bearing on the offense of arrest, Defendant faces considerable difficulty in establishing that his rights were transgressed by the search of his cell phone pursuant to a warrant.[4]

Apparently acknowledging the obstacle posed by this case law that largely approves warrantless cell phone searches incident to arrest, Defendant focuses his challenge primarily on the ***seizure*** of his cell phone, rather than the subsequent ***search*** of this device pursuant to a warrant. Specifically, he challenges the Government's authority

---

[4]The Court recognizes that Defendant questions whether the warrant authorizing the search of his cell phone was issued upon a proper showing of probable cause. This separate challenge to the lawfulness of the search of Defendant's cell phone is addressed below.

13

to take his cell phone from him at the scene of his arrest and hold it for several days before seeking a search warrant.  In Defendant's view, a cell phone is analogous to other items of personal property that, on their face, are unlikely to serve as evidence of the offense of arrest, and thus cannot be seized and retained by law enforcement officers upon their discovery during a search incident to an arrest.

Yet, Defendant has failed to identify any case law support for this proposition, and the decisions uncovered in the Court's own research point to a contrary conclusion.  In *United States v. Burgess,* 576 F.3d 1078, 1082, 1087-90 (10th Cir. 2009), for example, the Tenth Circuit addressed a challenge to the search of a laptop computer and two external hard drives found during a traffic stop of a motor home.  In considering the limits to a possible analogy between a computer and a closed container, such as a locked briefcase or file cabinet, the court opined that the difference "might lie in the sheer range and volume of personal information the computer may contain."  *Burgess,* 576 F.3d at 1088.  In light of this distinction, the court reasoned that the appropriate balance between a computer owner's possessory and privacy interests and the law enforcement interest in preserving possible evidence of a crime could best be struck by seizing the computer, but not searching its contents until the police first secured a warrant.  576 F.3d at 1089-90; *see also United States v. Gibbs,* __ F. App'x __, 2013 WL 6098419, at *4 n.1 (4th Cir. Nov. 21, 2013) (holding that the defendant's cell phones were subject to seizure and search incident to his arrest, but noting in addition that "the DEA agents prudently

14

obtained a search warrant to search the cell phones"); *United States v. Arellano,* 410 F.

App'x 603, 606-07 (4th Cir. Feb. 8, 2011) (affirming the denial of the defendant's motion

to suppress evidence obtained in a search of his cell phone, where the cell phone was

taken from the defendant incident to his arrest and then searched more extensively two

months later pursuant to a warrant); *Dixon,* __ F. Supp.2d at __, 2013 WL 6055396, at *5

(finding that while there was "no question" that the government could seize the

defendant's cell phone incident to his arrest, the ensuing extraction of data from the cell

phone was "more than minimal" and thus required a warrant); *United States v. Mayo,* No.

2:13-CR-48, 2013 WL 5945802, at *14 (D. Vt. Nov. 6, 2013) (holding that the seizure of

the defendant's cell phones incident to his arrest was lawful, but that "the Fourth

Amendment requires that law enforcement obtain a warrant before performing a forensic

search of lawfully seized cell phones").  This, of course, is precisely what happened with

Defendant's cell phone in this case — it was seized incident to his arrest, but its contents

were not searched until TFO Gavel obtained a warrant.

In another line of cases, the courts have approved the warrantless seizure of such

items as suitcases and laptop computers based on probable cause, so long as "the

exigencies of the circumstances demand" such a seizure pending the issuance of a

warrant.  *United States v. Place,* 462 U.S. 696, 701, 103 S. Ct. 2637, 2641 (1983).  The

Sixth Circuit invoked this principle in *United States v. Respress,* 9 F.3d 483, 486 (6th Cir.

1993), explaining that it has "long been lawful" to seize "a person's effects, based on

probable cause, in order to prevent the disappearance of evidence [until] a warrant could be obtained and a search conducted."  Thus, in that case, the court upheld the seizure of the defendant's suitcase for approximately ten hours while federal officers obtained a warrant to search this item, finding that the facts known to the officers "exhibit[ed] a substantial probability that incriminating evidence would be found in [the defendant's] suitcase." *Respress,* 9 F.3d at 487-88.  Indeed, the court reasoned that "because the officers obtained no new investigatory information between the time of the seizure and the time they applied for the search warrant, if there was probable cause to *search* the suitcase, there was ipso facto probable cause to *seize* the suitcase."  9 F.3d at 486 (emphasis in original) (footnote omitted).

Similarly, in *United States v. Bradley,* 488 F. App'x 99 (6th Cir. July 5, 2012), the Sixth Circuit held that the defendant's laptop computer had lawfully been seized pending the issuance of a search warrant the following day.  The defendant in that case did not "challenge[] the district court's finding that there was probable cause to believe that his laptop contained evidence of child pornography," but questioned only "whether exigent circumstances justified the warrantless seizure of [the] laptop and whether the manner and duration of the execution of the warrantless seizure were reasonable."  *Bradley,* 488 F. App'x at 102 (footnote omitted).  As to the first of these issues, the court observed that "[o]ne of the recognized situations that may justify acting without a warrant is an urgent need to prevent evidence from being lost or destroyed."  488 F. App'x at 103 (internal

quotation marks and citation omitted).  The investigating officer testified at a suppression hearing that he believed there was a "good chance" that the laptop's hard drive would have been "tampered with [or] erased" if he had left the device in the defendant's possession while seeking a warrant, and the Sixth Circuit found that this belief was reasonable, holding that "it is objectively reasonable to seize a container an officer has probable cause to believe contains evidence of a crime, rather than leave it unguarded in the hands of a suspect who knows that it will be searched."  488 F. App'x at 103. Although the court recognized the "strong personal interests that demand caution by police in seizing personal computers," it determined that "the government's interest in preventing the destruction of evidence is equally strong when electronic evidence is at issue," in light of the "inherently ephemeral and easily destructible" nature of such evidence.  488 F. App'x at 104.  Finally, as to the reasonableness of the duration of the warrantless seizure of the defendant's laptop, the court held that while "the better practice would have been to seek review sooner rather than later," a delay of approximately 26 hours was not unreasonable under the circumstances, particularly where the interest implicated by this seizure was "possessory, as compared to a privacy or liberty interest." 488 F. App'x at 106.[5]

---

[5]Along the same lines, the case law governing inventory searches permits the police to "remove and list or inventory property found on the person or in the possession of an arrested person who is to be jailed." *Illinois v. Lafayette,* 462 U.S. 640, 646, 103 S. Ct. 2605, 2609 (1983).  Arguably, then, the Detroit police were permitted to seize Defendant's cell phone as an item found in his possession at the time of his arrest and incarceration, although the record does not disclose whether the phone was taken as part of the "routine procedure" employed by the

Even if *Respress* and *Bradley* perhaps are not directly controlling here, they lend additional support to the conclusion that Defendant's cell phone was lawfully seized incident to his arrest and pending the issuance of a search warrant. Assuming there was probable cause for this seizure, *Respress* approves "[t]he practice of seizing an item based on probable cause in order to secure a search warrant for it." *Respress,* 9 F.3d at 486. As to this threshold issue of probable cause, the court in *Respress* pointed to a magistrate's subsequent determination of probable cause and issuance of a search warrant, and it noted that the police "obtained no new investigatory information between the time of the seizure and the time they applied for the search warrant," so that the seizure "ipso facto" was supported by probable cause. *Respress,* 9 F.3d at 486-87. Likewise, in this case, the search warrant application prepared by TFO Gavel included very little new information that was not already known at the time of Defendant's arrest,[6] and it follows that Magistrate Judge Grand's finding of probable cause to search Defendant's cell phone also established probable cause to seize the phone incident to Defendant's arrest.[7]

--------

Detroit police "incident to incarcerating an arrested person." *Lafayette,* 462 U.S. at 648, 103 S. Ct. at 2611.

   [6]The only additional information cited by TFO Gavel was that a search of Defendant's home uncovered a pair of boots that appeared to be the same as those worn by the robber in the surveillance video obtained from the BP gas station. (*See* Defendant's Motion, Ex. 1, Search Warrant Aff. at ¶ 8.) This merely confirmed the eyewitness account of the BP clerk who recognized Defendant as one of the robbers from past encounters, and who picked Defendant's photo out of a line-up as the individual who had robbed the gas station. (*See id.* at ¶¶ 4-5.)

   [7]Again, Defendant separately questions whether the warrant to search his cell phone rested on a proper showing of probable cause, and the Court addresses this challenge below.

18

Finally, both *Respress* and *Bradley* teach that the seizure of an item is justified in order to prevent the imminent loss or destruction of evidence while a warrant to search the item is obtained, *see Respress,* 9 F.3d at 486; *Bradley,* 488 F. App'x at 103, and the cell phone here, like the laptop in *Bradley,* F. App'x at 104, contains electronic evidence that is "inherently ephemeral and easily destructible" if the device is not secured pending the issuance of a search warrant.  Accordingly, under this and the other above-cited case law, the Court concludes that Defendant's cell phone was lawfully seized incident to his arrest, and that it properly remained in the custody of law enforcement officers until TFO Gavel was able to secure a warrant to search this device just over a week after Defendant's arrest.

In any event, even if Defendant were correct that the initial seizure of his cell phone at the time of his arrest was unlawful, he has failed to suggest a reason why the exclusion of evidence found in a subsequent search of this device pursuant to a warrant would be a proper remedy for any such transgression.  As the Supreme Court has emphasized, "[w]hether the exclusionary sanction is appropriately imposed in a particular case . . . is an issue separate from the question whether the Fourth Amendment rights of the party seeking to invoke the rule were violated by police conduct."  *United States v. Leon,* 468 U.S. 897, 906, 104 S. Ct. 3405, 3412 (1984) (internal quotation marks and citation omitted); *see also Herring v. United States,* 555 U.S. 135, 141, 129 S. Ct. 695 (2009) ("We have repeatedly rejected the argument that exclusion is a necessary

19

consequence of a Fourth Amendment violation.").  Because of the exclusionary rule's
"costly toll upon truth-seeking and law enforcement objectives," the rule applies "only
where its remedial objectives are thought most efficaciously served — that is, where its
deterrence benefits outweigh its substantial social costs." *Hudson v. Michigan,* 547 U.S.
586, 591, 126 S. Ct. 2159, 2163 (2006) (internal quotation marks and citations omitted).
Thus, the Supreme Court has held that evidence obtained in a search "should be
suppressed only if it can be said that the law enforcement officer had knowledge, or may
properly be charged with knowledge, that the search was unconstitutional under the
Fourth Amendment." *Illinois v. Krull,* 480 U.S. 340, 348-49, 107 S. Ct. 1160, 1166
(1987) (internal quotation marks and citations omitted).

The foregoing survey of the case law defeats any claim that it would or should
have been evident to the Detroit police officers who arrested Defendant that they could
not lawfully seize his cell phone incident to this arrest.  As discussed above, a sizable
majority of courts have upheld at least limited warrantless searches of cell phones
incident to an arrest.  *See United States v. Curtis,* 635 F.3d 704, 712-14 (5th Cir. 2011)
(citing this case law as foreclosing the application of the exclusionary rule to suppress
evidence uncovered in a warrantless search of the defendant's cell phone incident to his
arrest).  Even in those cases questioning or disapproving of warrantless searches of
electronic devices incident to an arrest, the courts generally have opined that such devices
may lawfully be seized and retained while law enforcement seeks to secure the necessary

search warrant. *See, e.g., Burgess,* 576 F.3d at 1089-90; *Dixon,* __ F. Supp.2d at __, 2013 WL 6055396, at *6; *Mayo,* 2013 WL 5945802, at *14. Since law enforcement followed precisely this preferred course here — *i.e.,* seizing Defendant's cell phone incident to his arrest, but not searching it until TFO Gavel had secured a warrant — it would be inappropriate to exclude the evidence uncovered through this reasonable course of action.

Moreover, to the extent that the Government failed to act promptly in applying for a search warrant, but instead continued to hold Defendant's cell phone for a few additional days after he was released from custody, this modest "intrusion into [Defendant's] possessory interest" in his phone did not implicate a more substantial privacy or liberty interest, *Bradley,* 488 F. App'x at 104-05, and thus does not warrant the "last resort" of an exclusionary remedy, *Hudson,* 547 U.S. at 591, 126 S. Ct. at 2163. Indeed, the Government gained nothing from this delay — as noted earlier, only one additional, fairly minor piece of investigative information was acquired between Defendant's arrest and TFO Gavel's application for a search warrant — so it cannot be argued that the evidence from Defendant's cell phone should be suppressed so that the Government does not profit from its purported transgression. To the contrary, because the Government ultimately secured a warrant authorizing the search of Defendant's cell phone, and because this effort was not aided in any way by the Government's prior seizure and retention of this device, the search of Defendant's cell phone through lawful

means, untainted by any prior, allegedly unreasonable seizure, does not provide a basis

for excluding the evidence uncovered in this search. *See United States v. Burgard,* 675

F.3d 1029, 1033-35 (7th Cir. 2012) (finding that a six-day delay between the seizure of a

cell phone and the search of the device pursuant to a warrant was not unreasonable);

*Arellano,* 410 F. App'x at 606-07 (recognizing that the defendant's rights were violated

when an officer turned on his cell phone at the police station following his arrest and

proceeded to answer and return several calls to the phone, but upholding a search of the

phone "[m]ore than two months later" pursuant to a warrant where the search warrant

application established probable cause independent of the "evidence flowing from this

unlawful act"); *Bah,* 2013 WL 5652647, at *7-*8 (holding that even if a police officer's

warrantless search of the defendant's cell phone incident to his arrest was unlawful, the

evidence uncovered in a subsequent search pursuant to a warrant was not subject to

suppression because the affidavit submitted in support of this warrant did not reference

any information discovered in the initial warrantless search); *United States v. Morales-

Ortiz,* 376 F. Supp.2d 1131, 1143 (D.N.M. 2004) (invoking the doctrine of inevitable

discovery to uphold the admissibility of information obtained in an unlawful warrantless

search of a cell phone and pager, where these devices "would have been searched legally

pursuant to the search warrant" that law enforcement agents later obtained).

**B.     Law Enforcement Could Reasonably Rely on the Warrant Issued by the
         Magistrate Judge Authorizing the Search of Defendant's Cell Phone.**

The foregoing analysis rests to an extent on the premise that the search of

22

Defendant's cell phone was conducted pursuant to a warrant issued on a proper showing of probable cause. As noted, however, Defendant challenges this premise, arguing that the affidavit submitted by TFO Gavel in support of the search warrant was wholly generic, resting in the officer's training and experience rather than any facts specific to this case. In response, the Government contends that TFO Gavel's affidavit provided sufficient particularized facts to support Magistrate Judge Grand's determination of probable cause, and that, in any event, there was an objectively reasonable basis for law enforcement authorities to rely on the warrant issued by the Magistrate Judge as lawful authority to search Defendant's cell phone. As discussed below, the Court finds that the Government has the better of the argument on this issue.

In determining whether an affidavit establishes probable cause for the issuance of a search warrant, "[t]he task of the issuing magistrate is simply to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit before him, . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates,* 462 U.S. 213, 238, 103 S. Ct. 2317, 2332 (1983). The duty of this Court, in turn, "is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed." *Gates,* 462 U.S. at 238-39, 103 S. Ct. at 2332 (internal quotation marks, alterations, and citation omitted). "A magistrate's determination of probable cause is afforded great deference by the reviewing court," and such a finding should be reversed only if the search warrant was authorized

23

"arbitrarily." *United States v. Greene,* 250 F.3d 471, 478 (6th Cir. 2001).

As recounted earlier, the search warrant affidavit prepared by TFO Gavel described the robbery offense under investigation, the facts that led to Defendant's arrest for this offense, and the results of a search of Defendant's home. (*See* Defendant's Motion, Ex. A, Search Warrant Aff. at ¶¶ 4 - 8.)  TFO Gavel then stated, based on his "training and experience," that the cell phone found in Defendant's possession at the time of his arrest could be expected to contain "evidence that reveals or suggests who possessed or used the device," as well as evidence that Defendant and other individuals involved in the robbery had "pre-plan[ned] the robbery by searching the internet for locations of certain businesses" and by "coordinat[ing] and communicat[ing] via cellular telephone prior to the robbery to arrange meeting times, the availability of firearms and other details related to the robbery." (*Id.* at ¶ 11.)  Thus, TFO Gavel sought authorization to search the cell phone for "forensic electronic evidence that establishes how [the device] was used, the purposes of its use, who used it, and when as well as evidence of other participants to the robbery." (*Id.* at ¶ 13.)

In Defendant's view, the affidavit prepared by TFO Gavel failed to identify any specific facts or circumstances of this case that would support a finding of probable cause to search his cell phone.  The affidavit does not, for example, cite any facts indicating that Defendant or any other individual involved in the robbery actually used a cell phone in connection with this offense.  Against this backdrop, Defendant submits that the search

warrant issued by the Magistrate Judge was a "'general warrant' allowing law
enforcement to rummage through the Defendant's personal property to see if any
evidence of a crime under investigation could be found." (Defendant's Motion, Br. in
Support at 9.) Moreover, to the extent that TFO Gavel relied on his training and
experience to opine that there was a fair probability that Defendant's cell phone would
contain evidence of the robbery offense under investigation, Defendant argues that such
"training and experience" alone cannot "substitute for the lack of [an] evidentiary nexus"
between his cell phone and criminal activity. *United States v. Schultz,* 14 F.3d 1093,
1097 (6th Cir. 1994).

　　　The Court cannot agree that TFO Gavel's affidavit was wholly devoid of reference
to facts and circumstances uncovered in his investigation, and instead rested solely on his
training and experience. Importantly, TFO Gavel stated near the outset of his affidavit
that the February 12, 2013 robbery of the BP gas station involved "two participants
wearing masks," with one of these participants subsequently identified as Defendant.
(Defendant's Motion, Ex. A, Search Warrant Aff. at ¶¶ 4-5.) TFO Gavel then described
the additional evidence uncovered in his investigation that tended to confirm that
Defendant was, in fact, one of the two participants in the robbery. (*See id.* at ¶ 8.) In
light of these facts, TFO Gavel cited his training and experience as grounds for believing
that the cell phone found in Defendant's possession would contain evidence of pre-
planning of the robbery and of "coordinat[ion] and communicat[ion]" among the

25

participants "prior to the robbery to arrange meeting times, the availability of firearms and other details related to the robbery." (*Id.* at ¶ 11.) Plainly, then, TFO Gavel did not rely exclusively on his training and experience as grounds for searching Defendant's cell phone, but rather cited the evidence of Defendant's joint participation in the gas station robbery along with another individual as supporting his belief that a search of this device would reveal evidence shedding light on the identities of these multiple participants and their possible pre-planning and coordination of criminal activity. Under this record, the Court finds no basis to disturb the Magistrate Judge's determination of probable cause to search Defendant's cell phone.

In a number of other cases, the courts have pointed to analogous facts as supporting the inference that a search of a cell phone was likely to uncover evidence of criminal activity involving multiple participants. In *United States v. Barret,* 824 F. Supp.2d 419, 448 (E.D.N.Y. 2011), for example, the court rejected the defendant's contention that the information in an affidavit prepared by a federal DEA agent was "insufficient to establish probable cause to search his cell phone." In so ruling, the court observed that the affidavit "described in detail" the "circumstances leading up to and surrounding [the defendant's] arrest," including an investigation evidencing the defendant's involvement in a "drug distribution organization." *Barret,* 824 F. Supp.2d at 448. This description then was followed by the DEA agent's statements "that (1) cell phones are capable of electronically storing numerous types of information; and (2) in her

experience, individuals involved in narcotics trafficking typically use cellular phones to communicate and store information and other records on their phones." 824 F. Supp.2d at 448. The court found that this affidavit provided "ample support" for a magistrate judge's "practical, common-sense determination that there was probable cause to believe that evidence of a crime would be found on" the defendant's cell phone. 824 F. Supp.2d at 449.

Similarly, in *United States v. Wiseman,* 158 F. Supp.2d 1242, 1249 (D. Kan. 2001), the court found that there was probable cause to issue a warrant to search a cell phone found in the defendant's vehicle at the time of his arrest. In an affidavit in support of the application for this warrant, an officer described the "circumstances surrounding the arrest of the defendant" for the manufacture of methamphetamine, and also set forth the officer's opinion, based on his experience in law enforcement and in narcotics investigations, that individuals involved in the manufacture of methamphetamine "often have different electronic devices such as . . . pagers [and] cellular phones" that are "used to facilitate the crime" and to "store information of their associates['] names and phone numbers." *Wiseman,* 158 F. Supp.2d at 1249 (internal quotation marks and citation omitted). In determining that this affidavit established probable cause to search the defendant's cell phone, the court observed that it had "become common knowledge in the courts" that "cellular phones, complete with memory of numbers recently or frequently called, or their 'address books,' are a known tool of the drug trade." 158 F. Supp.2d at

27

1249 (collecting cases); *see also United States v. Georgiou,* No. 09-88, 2009 WL 4641719, at *10 (E.D. Pa. Dec. 7, 2009) (rejecting the defendant's challenge to a warrant authorizing the search of various electronic devices found in the defendant's possession at the time of his arrest for leading a conspiracy to manipulate stock prices, and explaining that probable cause was not defeated by the absence of evidence that the particular devices to be searched were actually used by the defendant in furtherance of his alleged criminal activity); *United States v. Eiland,* No. 04-379, 2006 WL 516743, at *12 (D.D.C. Mar. 2, 2006) (upholding a warrant to search cell phones found in the defendant's residence and vehicle, where the affidavit in support of the search warrant application "contained references to [the defendant's] conduct sufficient to support a finding that he was involved in illegal narcotics trafficking," and where the "affiant also noted that, in his extensive experience, persons involved in illegal narcotics trafficking frequently . . . use cellular telephones to facilitate their communications"). *See generally United States v. Sims,* No. 11-6353, 508 F. App'x 452, 460 (6th Cir. Dec. 12, 2012) (explaining that the "only probable cause necessary" to secure a warrant or wiretap for a cell phone "is that the phone itself is being used in connection with an offense or commonly used by someone committing the offense").

Finally, even if the Court were to conclude that TFO Gavel's affidavit failed to establish probable cause to search Defendant's cell phone, suppression of the evidence found in this search would be unwarranted unless TFO Gavel lacked "reasonable grounds

28

for believing" that the search warrant signed by Magistrate Judge Grand "was properly issued." *Leon,* 468 U.S. at 923, 104 S. Ct. at 3420; *see also United States v. Carpenter,* 360 F.3d 591, 595 (6th Cir. 2004). Under *Leon'*s objective "good faith" standard, an officer is entitled to rely on a magistrate's determination of probable cause unless "the issuing magistrate [has] wholly abandoned his judicial role," the application for the warrant rests on "an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable," or the warrant is "so facially deficient . . . that the executing officers cannot reasonably presume it to be valid." *Leon,* 468 U.S. at 923, 104 S. Ct. at 3421 (internal quotation marks and citations omitted).

In light of the case law surveyed above, the Court readily concludes that TFO Gavel's affidavit established a "minimally sufficient nexus" between the criminal activity under investigation and Defendant's cell phone, such that a reasonable officer in TFO Gavel's position would have had a good-faith belief in the validity of the warrant issued by the Magistrate Judge. *See Carpenter,* 360 F.3d at 596. As discussed, a number of courts have found that an affidavit establishes probable cause to search a cell phone when it describes evidence of criminal activity involving multiple participants and includes the statement of a law enforcement officer, based on his training and experience, that cell phones are likely to contain evidence of communications and coordination among these multiple participants. Against this authority, Defendant has failed to identify any case law — and neither has the Court's independent research uncovered any such decisions —

holding under circumstances like those presented here that a warrant to search a cell phone was invalid.  It follows that TFO Gavel had reasonable grounds for believing that the search warrant issued by the Magistrate Judge was valid, and that *Leon*'s good-faith exception would apply even if it were determined, contrary to this Court's conclusion, that the warrant to search Defendant's cell phone was issued without probable cause.

## IV.  **CONCLUSION**

For the reasons stated at the December 5, 2013 hearing, as supplemented by the

rulings set forth above,

NOW, THEREFORE, IT IS HEREBY ORDERED that Defendant Maurice

Gholston's October 28, 2013 motion to suppress evidence (docket #33) is DENIED.


s/Gerald E. Rosen
Chief Judge, United States District Court

Dated:  January 27, 2014

I hereby certify that a copy of the foregoing document was served upon the parties and/or
counsel of record on January 27, 2014, by electronic and/or ordinary mail.

s/Julie Owens
Case Manager, (313) 234-5135